I have pleased the Court, Mark Halpern, for Millennium. I'd like to try to reserve a minute for rebuttal. I'd like to start with how we think the district court proceedings should have played out because I think that the procedural aspect really informs a lot of this discussion. We tendered the subpoenas from the DOJ to Allied World and they accepted defense coverage applying a potential for coverage standard. And then at one point early on they stopped defending. The real issue initially was not potential for coverage or anything else. It was that they applied a $100,000 sublimit. And so there's a dispute there. Once that dispute came up, we sued them and we promptly, in the coverage case, moved for summary judgment saying that there's clearly a potential for coverage here and that they should be advancing defense costs pursuant to the policy. We think the potential for coverage standard clearly applies. I'll get to that in a moment. And that's where I think that things with all due respect went off the rails in the district court because the court, instead of applying the potential for coverage standard and requiring the real-time advancement of defense costs, which is a key component of this policy and its own provision providing that, instead applied a different standard and basically required the parties to conduct extensive discovery about what was being investigated, etc. And that went on for a couple of years. So what should have happened was that we were receiving, we should have been receiving defense costs in real time, which frankly given the pace of the defense expenditures would have exhausted their policy fairly quickly. There's only a few million dollars in that policy. And that probably would have exhausted excess coverage on top of that. And then at some point down the road, the government completes its investigation. And for the first time in basically three years into the government states what its allegations are. Prior to that time, we knew they were investigating a number of things. And we knew and Allied World knew and agreed that they were investigating, the government was investigating, some completely new issues that had never come up before in any prior key TAM, any prior competitor action. One key of those ones being the custom profiles issue, which if it wasn't clear from the briefing basically, is that Millennium would provide doctors with a special requisition form where you could check one box and a whole host of tests would be conducted. And the government's point was that doesn't satisfy the requirements that a physician specifically identify which tests should be conducted. So automatically a certain number of tests, sometimes a large number of tests would be conducted. That was a the government intervenes and files their complaint. And that complaint, the first time when it was unsealed, provides what the government's actual allegations were. So what should have happened at that time, they would have already exhausted, they've long been exhausted. We would have had our defense coverage under the policy which we were entitled to and which we didn't get and they breached and there's damages for that regardless of whether they get any money back. But at that point what they should have done is then if the case was still going, I guess they could have amended the complaint to add a recoupment claim or some other claim that they get the money back. They didn't, none of that happened of course. Or if the case was over at that point, they could have filed a new action and tried to get some of that money back. In this action it so happens they didn't even file a recoupment claim. I don't think their affirmative defense has even stayed a recoupment claim. So everything kind of ended up discombobulated, for lack of a better word, with respect to the procedural aspect. Can I interrupt and ask you a question? Of course. In the last order of the district court, the one in which you finally lose, the district court writes, in support of this argument, Millennium points to examples of DOJ allegations. It claims fall outside the specific claims exclusion that lists four of them. I'm on the bottom of page six of its order. Fake custom profiles, requirement that the physicians order a minimum number of drug tests, witness intimidation, and false representation as to efficacy of testing. Then the judge says, writes, however a closer look at all of these examples shows how each is still involved, at least in some way, with the three specified excluded actions. Do you disagree with the judge's conclusion? I disagree, Your Honor, and here's why. The government, for the first time, there included, we will concede they included in their complaint, along with a series of very specific allegations, for example, regarding custom profiles, pages and pages of allegations of why this is wrong. They also included some of the things that a specific attorney for the government would do, saying, hey, that conduct may also be tied to kickbacks. And the specific kickback issue, for example, they mentioned was the provision of these free point of care testing cups. So they do mention that. However, I would argue that, well, first of all, I would argue that even at that point forward, there's still probably the potential for coverage under the appropriate standard, because those are only some of the allegations that potentially tie it. If you look at most of the allegations regarding custom profiles, there's nothing to do with any kickback allegation. And the case that the government may have taken the trial may have been solely focused, for example, on saying that it was improper for Millennium to set up their requisition form this way. And that would be a completely new issue. So I think Judge Beauchamp went too far. But the coverage says, and I'm not on the previous page, in any way involving, that's awfully broad. So, Your Honor, I will concede this. I think that from the date of the complaint, of the government complaint going forward, I think they have a pretty good argument. I think we still have arguments that at that point, the potential for coverage, their duty to advance, extinguished from that point forward. The problem is that their policy had long been exhausted and their defense costs that they should have been paying for three and a half years that they never paid. Their burden there would be to show not what the government ultimately alleged in their complaint, because that only shows what the claims were from that date going forward. What they needed to do, because this policy provides coverage for subpoenas, which don't contain any allegations, is they would need to go back and be able to prove that some components of the investigation tied back to prior litigations. And I'm not sure, frankly, first of all, once again, they don't even have a recoupment claim. So procedurally, there may be an issue there. Secondly, I'm not sure they can do that because certainly what the government ultimately alleged, I don't think that can be dispositive of what they investigated. At what point does Millennium know what the government's alleging? At the point of the complaint. I know. At what point did they learn that? At what point in time do they get their hands on the information as to what the government is complaining about? It was, I believe, shortly after the government intervened, filed their complaint intervention, which was March 2015. And when is that in relation to the time that Millennium enters into the $256 million settlement? So we entered the settlement in, I believe, October or November of that year of 2015. And at what point do you turn over that information to the insurance company? As soon as the government allowed us to. My understanding is a series of events there was that. But the government is forbidding you from turning that over when you find out the information? Correct. That's my understanding. So the subpoenas were in March. That's my understanding. What's your understanding based on? From the history of the case, what I was told by defense counsel was that. It would astound me that the government will forbid you from communicating with the insurance company the contents of the complaint. My understanding is that the complaint was first, when the government first entered the complaint in three years into their investigation, so in March 2015, that that was under seal at that point. And then at some point thereafter, in the course of settlement discussions with Millennium, the government agreed to partially unseal that complaint to Millennium, but told Millennium, this is my understanding, that we were not to provide that to anyone. And then. Including your insurer. That's my understanding. Did Millennium ever make any specific request to allow you to show the complaint to the insurer? I don't want to misspeak on that fact. But my understanding. What I'm after here is obviously, the insurance company is saying, you guys have been keeping information from them on a pretty regular basis, including your representations in the separate Ameritex litigation and so on, because according to the insurance company, you knew a lot about what was being investigated, but you didn't turn it over to the insurance company because what you knew, or at least what the insurance company says you did know, would show that there was no coverage. And that, your honor, is that is completely untrue, that allegation. We were providing stuff and trying to get the government to allow us to provide stuff in real time to the insurer, but there were no allegations being made. We knew the government was investigating a whole series of things, and then once the court in the underlying action said that the potential for coverage, incorrectly said that the potential for coverage standard did not apply, and said go do discovery on what's being investigated, everything was provided that could possibly have been provided. The defense counsel were deposed, and information about every conversation they had with the government was provided. Nothing was withheld. We had no, we had no basis for wanting to withhold anything. Our point was that we don't know what exactly they're going to allege, but we know they're investigating at least some very new issues. That was the point, and it wasn't until the government actually made an allegation, and Judge Bichonte agreed with us here, that it wasn't until the government actually made an allegation that they could apply these exclusions. Just a few months prior to that, the court had said, hey look, based on everything, all the interviews of witnesses before grand juries, we see that there's a bunch of new issues. We see there may be some old issues. Certainly the government was asking about peacocks and stuff like that, but we don't know what the government's actually after. We don't know what they're going to allege, and that didn't crystallize until the complaint, and the problem is the complaint is not dispositive evidence of what the And there was no other evidence of what they were investigating that we haven't provided. They put all of that evidence that they got, the witness interviews, the defense counsel interviews, every subpoena, every document, they put all that evidence before Judge Bichonte in the second summary judgment motion, the time we won. They put all that evidence before the district court, and the district court said, no, I still can't tell what their actual allegations are going to be, and because there's coverage for subpoenas, there's the potential for, well, she didn't say the potential, but there is coverage here. You've satisfied your burden, even under the, not under the potential for coverage standard, of showing that it's basically within the scope of coverage. The mistake then happened, I believe, that when, besides the first mistake of not applying the potential for coverage standard and getting us costs in real time, which is, cash flow is a major issue, the other mistake was then the complaint comes out, and the settlement comes out, and it appeared, perhaps it gave the misimpression that something was being disguised, but the only new information on which the court based its motion for reconsideration ruling... This is a question that's really off to one side, and it's a practical question. This is DNO insurance, right? It's a form of DNO, correct. And if this stands, do you know who pays? Does Millennium pay, or do the directors and officers pay themselves independently? For the defense costs? That is to say, you're after $5 million in insurance. You just lost it. If that judgment stands, what happens to the directors and the officers of directors? Are they out of pocket, or is it just the company? My understanding is it's just the company that was out of pocket, and they were indemnifying the defense costs for the officers. They'll indemnify even though it's DNO insurance. And the directors. Correct. And counsel, just so I'm clear, I think what you're asking us to do, as to whether certain issues were covered or not, I don't recall the district court ever breaking it down issue by issue. It kind of just, in one kind of a glob, just a blob, said none of this is covered. I guess what you're asking us to do is to have the district court actually break them out issue by issue to see what would be Well, we would ask two components. One is to instate the correct standard potential for coverage. Sure. And that was the potential through the date of the complaint. And then to the extent they have a recoupment claim, once again, I think there's a pleading issue there, then with respect to recoupment to say, certainly it can't be all one claim. To the extent that they can prove that certain defense costs pertain to certain issues that were litigated previously, then they can get those back. And then break it down that way. And that has not been done by the district court. Correct. That is correct. I'll reserve I assume if we take you over time, you've got some chance for rebuttal. Why doesn't the passage that I read to you show that the district judge did break it down? I think the district court did two things. One is applied a single claim standard. Because in part of the ruling, the court said, well, the settlement mentions Cunningham, so it must have involved Cunningham. But then the court does go down and break it down, but not issue by issue. What the court really does is say, well, everything relates to medically unnecessary testing, and that was at issue in, or everything relates to a business plan. And we cite to some cases on that issue, Eureka from this court, for example, where you can't, that's not the appropriate standard. That's too broad a standard to say, well, there was some previous complaint that alleged that we had a bad, the way we do business was improper, and then use that to say everything's encompassed by that, because then the coverage would be illusory. We would get no coverage from any new claim. So instead, you have to look at what Emeritus, Aegis, Cunningham, what they were actually alleging, and they had very specific issues, which were completely different. For example, their main issue is kickbacks, which are completely different from this custom profile issue, which even by Allied World's discovery responses, they admitted was not one of the old prior issues. So I think you need to break it down with a finer... So, but your answer to me then depends upon your conclusion that the district court is just wrong when the district court says, well, in support of its argument, Millennium points to Millennium Employees created fake custom profiles. The district judge says, well, they're related. So they did break it down, but you're saying they just, they made a mistake, the district judge made a mistake after she broke it down. Yes, but at two levels. One at the level that, yes, too broad a brush, but other at the level that the district court based that determination on what was alleged in the complaint, and saying because it was alleged in a particular way in the complaint, that shows that that's what was being investigated the entire time, and it wasn't until the complaint that the government made any indication. There's nothing in the record, thousands of pages, that they were tying custom profiles to kickbacks or anything else, that it wasn't a completely new issue. Thank you. Morning, Your Honors. Ron Schiller for Allied World. I'd like to begin by addressing the questions that the panel put to Millennium. First off, the perspective. Our policy incepted or started on December 1, 2011. Before that, Cunningham had filed a quid tam matter, and shortly after that, McGuire filed a quid tam matter. There were several 28-J submissions. One of them that we submitted to the court was a decision from the district judge, now on appeal in the First Circuit, relating to a dispute between the quid tam plaintiffs about who gets the fee, which is a substantial fee, and a point on which the government took no issue. The Cunningham court itself dealt with the evolving nature of the complaints, and ultimately concluded that while Cunningham's description of the fraud included slightly different allegations because the government had changed its definition of what Millennium could do in the Medicare rules, the court went on and said, however, all the essential elements of the covered conduct were in Cunningham's complaint. Now that's important. And then it went through them, by the way, and it actually deals with some of what Millennium has been arguing are somehow different. What Judge Bichon ruled below was first, she took Millennium at its word. And it's important to note, and we obviously don't get a chance to reply to a reply brief in the Ninth Circuit, that many of the arguments made in the reply brief bear no connection to the arguments that were made in the first appellate brief of Millennium here, and certainly were never presented to the district court judge. For example, Millennium has never argued that the subpoena is a claim, with the exception of suggesting that in its reply brief here for the first time. And in fact, members of the panel, what Millennium said, very importantly, is that the subpoena was not a claim. They even had a caption in their district court briefing, and they stuck to this in all of the three arguments we had in the district court. They said the claim colon, the DOJ's investigation of Millennium. Now that's important, because these are defined terms in our policy. A claim, which is a bolded capital C word, is a defined term, and by endorsement, which was a manuscripted addition to the policy, a claim was defined to include an investigation, civil or criminal formal investigation, commenced by issuance of a subpoena. Not the subpoena, the investigation. And we were in agreement with that for five years. Now, it's not just important because they're the appellant, and they never made this argument to the district court, and they never pled it in their complaint below. And there's a reference to us being the plaintiff. We weren't. We were sued. They never pled it. They never amended. They consistently agreed with us that the only definition of claim that matters in this case is the one that says it's an investigation commenced by a subpoena. Now, that's also important to the defenses in this case, because the exclusions all turn on claims, and a claim is defined to include not only allegations, but actual wrongful acts. Now, another argument that they made for the very first time in their reply brief to try to get around what the panel mentioned to them on their argument about the very breadth of what we call the specific claims exclusion. And that's the exclusion that says there's no coverage for any claim, capital C, defined word, in any way involving Ameritax, Cunningham, Aegis. Now, that's important because we knew about them. And how did we know about them? Because when they applied for insurance, and this is in the record, their general counsel, working with his large insurance broker, made clear to Allied World, we're not going to say that anything in any way involving these types of claims will be covered here. Now, that's not an illusory coverage issue, because after all, there can be other types of claims. There can be securities class actions brought by shareholders. There can be claims by doctors or patients that they should have gotten reimbursement for drug testing or that the drug testing was done wrong. There can be other HIPAA claims. Those things do not relate back to Ameritax, Cunningham, and Aegis fraudulent billing claims. In fact, to be clear, because he knew these were very broad lawsuits, these competitor lawsuits, these other problems, he said the current lawsuits challenged Millennium's testing methodology, billing practice, and relationships with physicians. In other words, every aspect of its business. And then he excluded them. Now, before anybody feels sorry for Millennium, be sure they had prior coverage with Travers, Lloyds. They also had subsequent coverage. So to some extent, and they admit this in their briefing, if they're relating, if they're referring to, for example, intimidation of witnesses, which was something that the government complained about, the first answer is it's inextricably intertwined, or in the language of our policy, it's related to the other wrongful acts, and therefore excluded. And that's good enough. It should be the end of the discussion. But the second point is, if it was separate, if somehow you ignore that a claim is an investigation, and you say, but this is a separate claim somehow, then it postdates our policy. And it goes into another policy period, which I can say, fortunately for Allied World, we don't ensure. Now, to put things in further perspective, this was a hide-the-ball four years. We get sued in 2012. They immediately file for summary judgment when we're asking for discovery the day before, the business day, I should say, before the summary judgment argument, at that point in front of Judge Huth. They deliver some but not all documents, and in those documents, for the first time, we get what had been a sealed document. So we couldn't get it from a court record, from their Ameritax litigation. And remember, Ameritax is one of the three suits in the specific claim exclusion. And by the way, they had filed everything under seal, all over the country, which made it very hard for us to get anything to disprove actual coverage. And in that, in the submissions on Ameritax, we get for the first time, when they're going for summary judgment against us, their defense lawyers in the Florida District Court telling the court that the subpoenas issued by the DOJ follow and closely track the evidence. That's one quote. Because Ameritax's allegations overlap so closely with the USAO investigation, should the government obtain any injunctive relief against Millennium, then Ameritax will also be a beneficiary of such relief. Next, as shown in the chart attached as Exhibit 3 here, too, there is substantial overlap between the issues on which the USAO has requested information from Millennium and the allegations made by Ameritax in its TAC, the Third Amendment complaint, about which Ameritax has propounded extensive discovery upon Millennium. There were a lot more. And here is the real coincidence. The chart that their lawyers, and I'm forgetting whether it was Hogan or they had a predecessor large firm involved when one was conflicted, that chart happened to almost mirror a chart we submitted to Judge Huff that we had made up before we ever got their chart to show the overlapping allegations. And this document was submitted to Judge Huff? Yes. Not to Judge Huff, to us. And then we made hay about it in the argument. And what they said at that summary judgment argument, right, well, it was submitted in the context of briefing, and then we used it at that argument, Your Honor. But what we said to her at the time was, one, they weren't saying there was no actual coverage. They actually said this was a duty to defend policy. And we said, you're right, it should be like a duty to defend clause, but you elected not to. Why? Because you wanted to control your defense, hire very expensive counsel, and tell us only what you wanted to tell us. Because if you instead turned it over to us, we would appoint defense counsel, who Allied World considered competent, but it wouldn't have been their counsel, and Allied World would have had certain control that it didn't have. They said, you're right, we misspoke. And then on their reply brief, for the first time, they said, but it doesn't matter. It should be like a duty to defend standard. And Judge Huff disagreed. Why? Because our policy says not only we have the duty to advance defense costs, but it says, subject to all other terms and conditions of our policy. And what the briefing does not say on their side is that makes sense. To give effect to all terms in the policy, what it means is that if we think, even before seeing whether there's actual coverage, that there is a covered claim at that time, we can pay defense costs before the actual suit is settled, won, or lost. And then if it turns out, either at the time of the settlement or win or lose, it wasn't, we can get it back. Or, and this is the And if you can get it back, do you get it back with interest? We believe we would, but we don't know. That's a dispute I'm sure we would have with them. But it ties into something else, Your Honor, because there are two ways this can come up. One is they contend it just means we have essentially, they have an inviolate right to get our money, and we can get it back later. We say not so fast. If we have coverage defenses, it's not a duty to defend policy. We don't, we have the right, for example, to consent to defense costs in advance, and you didn't ask us to consent. We have the right to consent to other things. It's not like a duty to defend policy, in other words. And we said, if it turns out that the other situation which their briefing doesn't contemplate is, if it turns out initially we thought there was a duty to advance defense costs, but something happens, there's an amendment to the complaint, or somebody testifies and says something for them that establishes that there really was a breach, we can stop paying, and we can say we never should have paid in the first place. And that's not something they contemplate at all. They say in order to give our reimbursement right, meaning we had a duty to advance them. Not so, Your Honors. Instead, if we thought there was a duty to pay defense costs and no coverage defenses to prevent that, and that can happen. It happens all the time. But something later happens in the underlying litigation that shows that we were wrong. We can stop paying defense costs, and we can say reimburse us. And that matters, because there are States, California isn't one of them, because of BUS in the GL context, B-U-S-S, but there are States like my State of Pennsylvania, where when you advance defense costs, you don't have the right to get them back, even if the facts of the law change and it establishes you never should have advanced them in the first place, unless you put it in the policy. So, Counselor, based on my limited experience in this area before I got this job, I was accustomed to policies where it would be pay as costs are incurred. And I take it you're saying that in this instance, and that's always been my experience, and so coming into this case, that's what I was familiar with. But you're saying that in this area, it's common that policies are not written that way. I'm saying you can have them written either way, and the fact that ours says subject to all other terms and conditions of the policy means that we're allowed to apply the other terms and conditions. And to be clear, Your Honor, not a single case they cite, either to say that we're subject to something like a duty to defend standard, even though it's not a GL policy or one that has the accoutrements of a duty to defend policy, or because they just say, we're wrong and we can get it back later, which is sort of interesting since they went through bankruptcy and they know it. But in any event, and to answer your question, no director or officer was ever harmed. We have subject to all other terms and conditions of the policy, and one of those terms and conditions of the policy says that we have to consent to things and that we have the right to apply our other terms and conditions of the policy to show there's no coverage. So this is, to be clear, Your Honor, policies are written both ways. And this policy was to omit, to add that language when many policies omit it. And they don't have a single policy that says subject to all other terms and conditions. Quick other comment or two that relates to something you just asked me, or you asked me a minute ago, and that is, they say they were somehow harmed. Well, first off, there was nothing for us to counterclaim for recoupment on, because Judge Huff agreed with us that we didn't have to advance any money, and ultimately we won. And I would submit to your Court that a case called Baker, which interestingly enough they cite, but so do we, was a case where the Ninth Circuit said in agreeing with the insurer there was no coverage, it would not reach the other issue whether or not a prior disaccord order that had to advance defense costs should also be reached. It said it's moot. Their argument here, which is somehow that even if they lose on the actual coverage, they should have gotten the use of the money for a few years. And I only touched on one area. I touched on the admissions to the Ameritax Court that they didn't give us until we got them almost too late. And there was also a tolling agreement that they had in 2012 and entered into with the Department of Justice. And there were also other documents. And to be clear, in September 2015, when we had the summary judgment argument that I lost in front of Judge Bichon, I said to Judge Bichon, the Wall Street Journal has reported that they have a deal and that there's a complaint out there or that at least they have the terms of a deal. Can you please stay this because it will be disclosed soon if the Department of Justice acts the way it normally does. And we filed a motion, a post. She turned to them and said, you know, what's going on? And their counsel said to Judge Bichon, there are no allegations yet. There were allegations. They've had the complaint since March. They didn't say, we're not allowed to tell you. And they also didn't say, and those allegations are too late. But I'm out of time. The only point I wanted to make is on the $8 million they say we would have had the use of and they should get 10 percent interest against us. Well, first off, we do think that we would be able to have gotten interest from them if they had had the use of our money. So it would have been a wash. Second, it's not $8 million because $5 million is an excess insurer and they can go after them for interest if they think they're entitled to it. And third, they can't prove up the $3 million as liquidated damages under California law anyway. Thank you, Your Honors. Thank you, counsel. I'll give you two minutes to rebuttal. Okay, since time is short. First, I'd like to quickly address the statement that the phrase subject to the terms and conditions somehow changes everything. There's an unbroken string of Ninth Circuit cases. This court in Olympic Club, gone. If you read the recent Brayden decision, it goes through a full analysis. It makes absolutely clear that the court's separate defense section, it creates a separate duty to advance defense costs that they breached. Let me ask you this, if I may. Assuming that we, and I don't ask you to concede, obviously you're arguing against this, but assuming we affirm Judge Brassant on the merits, are you required to return all, would you have been required to return all defense costs incurred? Well, on the merits, we believe that at most we have to return part of it, right? But if everything needs to be returned, then we only received $100,000 in defense costs. I think the result would be, we would return that except for the fact that they breached by not having met their duty to advance obligation. And so we would have accrued interest that our actual damages would be accrued interest on the $3 million. We would argue for the full $8 million because of the impact on the excess. We would also have a bad fate. And are you contending that if you do have to return or would have had to return advanced costs for defense, that you're not required to pay any interest on that? Oh, absolutely not, Your Honor, because the policy makes 100% clear that upon our request, they shall advance defense costs. And then at a later date, then we shall pay them back at that later point. So their right to get them back is not best. So I want to make sure. Assuming you would have to pay back defense costs that were advanced to you, would you have to pay interest on that money that you're now having to return? Absolutely not. Because? Because of the fact that our right to the money started at the beginning and went through the time that we have to return it. Their right to get the money back only vested at the point in which they proved that there was no longer a duty to advance. So that would have been on the motion for reconsideration. So your argument is even though you were in fact not entitled to it because it turns out you were wrong, you just get to hang on to the money and the interest is yours. Is there anything in the policy one way or the other on interest? No, not on interest, except it's in the language of the requirements of the duty to advance. If we have to pay it back plus interest, it eviscerates our right, this fundamental right to the advancement of defense costs under the policy. Every insurer would just thwart their right, thwart that part of the policy and say, oh, we think something may apply. I get the position. Okay. Quickly on the no hide the ball component, I just wanted to mention one more thing on this argument that the subject to the term somehow makes a difference. It doesn't. But I also note in subsection E of the defense and settlement of the claim, it says that they, at the request of the name insured, they shall reimburse prior to the final disposition of the claim, hence their language subject to all the terms and conditions of the policy. If the insurer shall not be entitled to payment of such defense costs under the terms and conditions of this policy, they will repay to the insurer. So it's basically saying, why would they say it twice? Clearly, if it's not subject to the terms and conditions of the policy, we still get it, but then they get it back later on. It's just clear in the policy, in my opinion, or at a minimum it's ambiguous. Quickly on the no hide the ball component, just if I have a couple of seconds on that, there's not a single suggestion in the record by the judges, by the referees that we did anything wrong, that there was any hiding of anything. And in fact, they were the ones that caused the problem, because their claims adjuster admitted that the potential for coverage standard applied, started providing defense costs, and we did the right thing by then immediately moving for summary judgment. That's the way these things work, to say, hey, based on the allegations and the potential for standard, we get coverage. There's no question that at that time, under the potential for standard, if that had been applied, we'd have gotten coverage. We would have won. We weren't hiding anything. And then interestingly, after two years of discovery, with all the things they said that we were hiding, supposedly, which we were not, they have all this information, and guess what? Their claims adjuster is deposed, as their person most knowledgeable, and admits, hey, I still can't decide if the exclusions apply. And then the judge looks at, Judge Beauchamp looks at all the information and rules in our favor on the MSJ. The only new information was then the complaint. So all this allegation about stuff that was hidden, nothing was hidden. Thank you, counsel.
judges: Reinhardt, W. Fletcher, Owens